IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| **NIKEL HICKS,** | * |
| Plaintiff, | * |
| v. | * |
| **OFFICER EUGENE LAYTON** | Case No.: GJH-19-2008 |
| and | * |
| **OFFICER DAVID ELYARD** | |
| | * |
| Defendants. | |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Nikel Hicks, who is currently incarcerated at the North Branch Correctional Institution ("NBCI"), filed this action pursuant to 42 U.S.C. § 1983 against correctional officers David Elyard and Eugene Layton ("Defendants"), alleging that Defendants physically mistreated him when transporting him to his housing unit at an adjoining facility, Western Correctional Institution ("WCI").[1] Defendants have filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. ECF No. 9. Hicks did not file a response. No hearing is necessary. *See* Loc. R. 105.6 (D. Md.). For the reasons that follow, Defendants' Motion will be construed as a Motion for Summary Judgment and will be granted.

**I.   BACKGROUND**

Hicks filed his Complaint in this action on July 9, 2019. ECF No. 1. According to the Complaint, during the afternoon of September 27, 2018, Hicks was transferred to WCI from NBCI by wheelchair. ECF No. 1 at 2.[2] In the process of taking him to his new housing unit,

---

[1] The Clerk of the Court shall correct the name of Defendant Eugene Layton on the docket.
[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated

1

however, Hicks alleges that Defendants "dragged [him] outside and inside the infirmary/medical building" and then drove him to the housing unit. Hicks asserts that the transfer aggravated a preexisting back injury and caused him to suffer "a lot of pain." *Id.* He seeks damages of $6,500 from each Defendant and an award of $400,000 due to an alleged violation of his Eighth Amendment right against cruel and unusual punishment. *Id.* at 3.

On November 25, 2019, Defendants filed their Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. ECF No. 9. Accompanying the Motion are exhibits including declarations from Defendants, Hicks's medical records, a report of an administrative investigation into the incident, and a DVD of surveillance video. ECF Nos. 9-2, 9-3, 9-4, 9-5, 9-6. By letter dated November 27, 2019, Hicks was notified that Defendants had filed a dispositive motion and that he that may file an opposition with exhibits and declarations. ECF No. 10. On December 18, 2019, Defendants supplemented their Motion to add an NBCI case manager's declaration that earlier that day, he witnessed Hicks watch a DVD containing the surveillance video that Defendants had included as an exhibit to their Motion. ECF Nos. 11, 11-1.

## II. STANDARD OF REVIEW

Defendants' Motion is styled as a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 9. Generally, if the Court considers materials outside the pleadings, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court does so, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id*. When the moving party styles its motion as alternatively seeking dismissal or summary judgment and attaches additional materials, as is the case here, the nonmoving party is, of course, aware that materials outside the pleadings are

---

by that system.

before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).

Here, Hicks does not assert that summary judgment is premature or that discovery is needed, nor does he object to the Court treating Defendants' Motion as one for summary judgment. Accordingly, the Motion will be so considered.

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23.

A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248. When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

### III.  DISCUSSION

####   A.  Eighth Amendment

The Eighth Amendment to the U.S. Constitution proscribes punishments that involve "unnecessary and wanton infliction of pain." *Gregg v. Georgia,* 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Scinto v. Stansberry,* 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein,* 825 F.3d 206, 218 (4th Cir. 2016). To establish an Eighth Amendment violation, an inmate must demonstrate both that a prison official subjectively "acted with a sufficiently culpable state of mind" and that the injury or deprivation inflicted was objectively serious enough to constitute a violation. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

To satisfy the objective requirement, a party asserting an excessive force claim must demonstrate that the officer used a "nontrivial" amount of force. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). "[N]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Id.* at 37 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). The subjective element requires an inmate to show that the prison personnel used force "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 6 (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). In evaluating this element, a court should consider "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response." *Iko v. Shreve,* 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley*, 475 U.S. at 321) (internal quotation marks omitted).

To the extent Hicks may also intend to raise an Eighth Amendment claim against

Defendants for ignoring his claim of pain, a correctional official is liable under the Eighth Amendment if he acts with "deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 104. To satisfy the deliberate indifference standard, a plaintiff must demonstrate (1) that the alleged deprivation is, objectively, sufficiently serious, and (2) that subjectively, the official acted with a sufficiently culpable state of mind. *See Scinto*, 841 F.3d at 225 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

### B. Evidence

Defendants argue they are entitled to summary judgment based on the exhibits they have provided, which include declarations, medical reports, administrative investigation results, and video footage. ECF No. 9-1 at 2–7, 12–13.

#### 1. Declarations

According to Defendants' declarations, on September 27, 2018, Layton was on duty at WCI in the facility's prisoner receiving area, from which prisoners enter and exit the facility, while Elyard was assigned to assist Layton. ECF No. 9-2 ¶ 3; ECF No. 9-3 ¶ 3. Hicks was sitting in a cell in the receiving area when Defendants arrived. ECF No. 9-2 ¶ 3; ECF No. 9-3 ¶ 4. When ordered to stand to be taken to his housing unit, he refused, claiming that he could not walk. ECF No. 9-2 ¶ 3; ECF No. 9-3 ¶ 4. Layton contacted WCI medical staff to evaluate Hicks's physical ability to comply with the order to stand. ECF No. 9-2 ¶ 3; ECF No. 9-3 ¶ 4. When medical staff arrived, they determined that Hicks was not physically unable to comply with the order, confirmed that there was no active medical order issued to Hicks for a wheelchair or other device to assist walking, and attempted to reason with Hicks by explaining that a prior MRI scan had shown he had no physical ailments. ECF No. 9-2 ¶ 3; ECF No. 9-3 ¶ 4; *see* ECF No. 9-5 at 2–7, 25–29.

In accordance with institutional security procedures, because Hicks still refused to stand, Elyard and Layton entered the cell and stood Hicks up by holding him under his arms on either side. ECF No. 9-2 ¶ 4; ECF No. 9-3 ¶ 5. Still holding Hicks under his arms, Defendants walked him to a "golf-cart type vehicle" that was "parked approximately 70 feet" from the receiving area. ECF No. 9-3 ¶ 5; *see* ECF No. 9-2 ¶ 4. Hicks did not tell the officers that this caused him pain, nor did he request to be taken to the medical unit for any pain or injury. ECF No. 9-2 ¶ 4; ECF No. 9-3 ¶ 5. Elyard sat next to Hicks in the cart to prevent any attempt by Hicks to injure himself while he was transported to the housing unit. ECF No. 9-2 ¶ 4.

In their declarations, Elyard and Layton acknowledge that Hicks resisted their assistance but deny that he was dragged to the cart. ECF No. 9-2 ¶ 4; ECF No. 9-3 ¶ 5. Elyard describes the episode as a "routine procedure and without incident." ECF No. 9-2 ¶ 5.

### 2. Medical Report

Hicks was evaluated by a nurse shortly after his transport by Defendants. *See* ECF No. 9-5 at 19. The nurse's report states that Hicks's physical appearance was "good" and that there was no sign of trauma or abuse. *Id.* The report also indicates that "inmate states he cannot bear weight without pain. Inmate walked from med cart into traffic/intake." *Id.* Five days later, Hicks's mental health was evaluated. *Id.* at 15. A "clinical assessment" in a record of the evaluation includes the notations "[d]ifficulty walking" and "[p]erson feigning illness." *Id.*

### 3. Administrative Investigation

On October 10, 2018, Hicks filed an Request for Administrative Remedy with the Maryland Division of Correction concerning his transport to WCI and other matters.[3] ECF No. 9-

---

[3] In the request, Hicks also alleged that later on the day of his transport, he was assaulted in his housing unit by a separate group of correctional officers, and that on October 1, 2018, his hand was injured in the slot of his cell door by an unknown officer. ECF No. 9-4 at 18, 21. These allegations are not presented in the Complaint.

4 at 17. The Intelligence and Investigative Division of the Maryland Department of Public Safety and Correctional Services assigned Detective Sergeant Aaron Wilson to investigate the Request. *Id.* at 2, 11. According to his report, which focuses on the other matters Hicks raised in his request, Detective Sergeant Wilson interviewed Hicks, Layton, and other witnesses, determined that there was no evidence to support Hicks's allegations, and closed the case. ECF 9-4 at 8–11.

### 4. DVD

In his declaration, Elyard explains that surveillance footage captured on camera "WCI-Enc-HU4-02-W499-HU4-C Yard PTZ," which has been provided to the Court as an exhibit, shows Elyard exiting the receiving building with Layton and assisting Hicks to the cart. ECF No. 9-2 ¶ 6. Noting the time stamp on the video, Elyard states that the video shows him with Layton and Hicks leaving the receiving building at 13:57:22, placing Hicks in the cart at 13:57:44, and driving him in the cart to the housing unit at 13:58:11. *Id.* Although the camera is too distant for Elyard to identify himself in the video, Elyard states that no other inmate was transferred from the receiving area or assisted to the cart immediately before or after Hicks. *Id.*

The Court has reviewed the DVD recording and finds that the images are too distant to discern the manner of assistance provided to Hicks, other than to substantiate that the period between Hicks exiting the building with Defendants and Defendants driving away with him in the cart was less than one minute.

### C. Analysis

The undisputed evidence that Defendants have offered demonstrates that Hicks refused an order to stand and stated that he was unable to walk. Medical staff were then called and indicated that there was no medical record substantiating Hicks's alleged inability to walk. Following the medical evaluation, Defendants Elyard and Layton assisted Hicks to a medical cart

and drove him to his housing unit. Hicks's physical appearance following his transport in the cart was normal and there were no signs of trauma or abuse.

Hicks provides no countervailing evidence and no basis to show that Defendants acted maliciously or sadistically for the very purpose of causing him harm. *Hudson*, 503 U.S. at 6 (quoting *Whitley*, 475 U.S. at 320–21). The assistance Defendants provided was brief and limited to enable Hicks's transfer to his housing unit. Further, Defendants' actions followed consultation with medical providers about Hicks's ability to walk, and Hicks did not complain of pain or request medical attention during the escort. Nor did evaluation of Hicks's condition following the transport indicate any mistreatment.

Viewing the record evidence in the light most favorable to Hicks, the Court finds that there is no genuine dispute of material fact that Defendants did not use excessive force, nor act with deliberate indifference to Hicks's serious medical needs, when they escorted him to his WCI housing unit. Accordingly, the Court will grant Defendants' Motion for Summary Judgment.

### III.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 9, will be granted, and this case will be closed. A separate Order shall issue.

Date: <u>July 8 , 2020</u>　　　　　　　　　　　　　　　　/s/_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　GEORGE J. HAZEL
　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge